Dyicman, J.
On the 14th day of August, 1883, the plaintiff in this action executed to the defendants a written lease for the basement of the building known as “No. 9 Beaver Street,” in the city of New York, for five years from November 1, 1883, for the yearly rent of $4,000, payable quarterly. The lease also contained the following stipulations: “And the said party of the-first part hereby further agrees, as soon as practical, and before the commencement of said term, to build two or more lath and plaster partitions in said basement, dividing the same into three apartments, each to be fitted up with suitable gas-fixtures and wash hand basins, and to warm the said apartments, with steam heat during the term of this lease, and to have said three rooms connecting by doors, if so required by the parties of the second part; to build two water-closets and two urinals in the rear part of said basement; to build a wide iron stairway, leading to the front part of said basement on Beaver-Street side; and to erect a wood and glass partition from the Beaver-Street front of said basement to the rear part of said building, and extending to the basement entrance on New street, leaving the passage-way or thoroughfare-seven feet wide from the Beaver-Street entrance to said New-Street entrance,. —the said passage-way to be used in common as ah entrance to and from said building, and to be lighted by the party of the first part at his own expense.” Then the lessees agreed to pay the lessor $1,000 towards the cost of such improvements, and the money was paid at the execution of the lease. In February, 1884, the lessees refused to take the premises, and this action was. then commenced for the recovery of the rent for the first quarter under the lease. The complaint set up the lease, and then alleged full performance of all the conditions of the lease on the part of the plaintiff. The first trial resulted in a verdict and judgment for the plaintiff, which was affirmed by the-general term, but reversed by the court of appeals. 16 N. E. Itep. 534. The court of appeals decided that the failure to comply with the stipulations, and perform the covenants contained in the lease would absolve the defendants from all obligations to take possession of the premises, or to pay rent upon failure to occupy the same. The opinion further stated this: “It was not a question to be submitted to the jury as to whether there had been a substantial compliance with the covenants of the lease. The evidence as to the-state in which the premises were left by the lessee is so far uncontradicted as to have made it the duty of the court to have directed, as a matter of law, that the lessor had not in that respect complied with the covenants of the lease. ” Upon the second trial, under the original pleadings, the plaintiff was. permitted to prove, over the objection and exception of the defendants, the variation from the stipulations in the lease, and the departure from the covenants providing for the improvements to be made in the demised premises.
The admission of sucli testimony under the complaint alleging full performance of and compliance with the contract on the part of the plaintiff was erroneous, and the error was not and could not be cured by the amendment directed by the trial judge upon the motion for a new trial on the minutes of the court. Southwick v. Bank, 61 How. 170; Day v. New Lots, 107 N. Y. 148, 13 N. E. Rep. 915; Romeyn v. Sickles, 108 N. Y. 653, 15 N. E. Rep. 698. The error thus committed requires a new trial, but we place-our decision upon broader grounds.
*910 The alterations and preparation of the demised premises required by the •covenant of the plaintiff were not made in accordance therewith. So much was substantially conceded upon the trial, and such was the charge of the •trial judge; but the trial proceeded and the recovery was permitted upon the theory of a waiver of performance of the conditions precedent by an agent of the defendants. Such claim of waiver is found in the testimony •of the plaintiff to this effect: He says he had a conversation with the
•defendant Stokes in the early part of August, before the execution of the lease, in which Stokes stated, in substance, that in reference to anything the plaintiff wanted to know' in fitting up the place he was to consult with McMahon; that Stokes was going to Europe, and McMahon was to have •charge of the place, and rent it for him when it was finished; and that plaintiff should take his instructions as to fitting it up from McMahon, who would look after it for Stokes. After this interview the parties reached an agreement, and the lease was drawn and executed, which embraced the contract, .and provided specially for the improvements to be made by the plaintiff. This written instrument must be taken as the final agreement of the parties, ■made without reference to any preliminary conversations or understanding, with the full intention that it should be executed and fulfilled. The uncon■tradicted testimony, both of Stokes and McMahon, is that McMahon never was the agent of the defendants in respect to the contemplated improvements, ■.and never was appointed such. He never was clothed with authority to eon-.sent to any change or variations; and the testimony of the plaintiff, that the •defendant Stokes said, “McMahon will Jook after the work,” and he should .take his instructions from him, is quite insufficient to establish an agency for •the variation or waiver of the covenants in the lease. The strongest infer•ence justified by the testimony is that McMahon was to look after the work .as it progressed, and the plaintiff was authorized to take instructions írotíi him in respect to the mode and manner of making the improvements called for by the lease, the material to be used, the quality of the workmanship, .and all details involved in the progress. of the work. In short, McMahon was to superintend the work, and see that it was performed according to the •covenants, and not to agree or consent to failure, variations, or non-perform.anc'e. Any other construction involves the absurdity of a change of a written contract to fit up the demised premises, in a manner specified with great particularity, to a contract to fit up the same according to the instructions of McMahon, and founding such theory upon a preliminary conversation between the parties long before the execution of the written instrument. We •can yield assent to no such construction. The covenants in the lease were made to be executed, and the law required their performance as a condition precedent to the obligation of the defendants to accept the premises and pay .the rent. The agency of McMahon, whatever it was, did not invest him with power to direct the manner of making the improvements. He never was appointed for any such purpose, and the declaration of Stokes to the plaintiff was entirely insufficient to create such an agency. He only said McMahon would have authority to direct the manner of doing the work. Whatever consent was given by McMahon to variations from the covenants was wholly unauthorized, and beyond the scope of his powers, and constituted no justification for the failure of the plaintiff to perform his covenants, .for which he was paid in advance by the defendants. There was therefore no proof of waiver, and the submission of that question to the jury was erroneous. Neither was there sufficient evidence of acceptance of the demised premises to constitute a waiver of the performance of the precedent conditions'. The possession of the premises never was delivered to the defend.ants, and McMahon never was authorized to receive or accept the same for them. It never was occupied by the defendants, and they never assumed .any control over it. While the defendants were required to make objections, *911 .and refuse to take the place within a reasonable time after they had knowledge of the failure of the plaintiff to fulfill his covenants, yet there is no proof •of unreasonable delay on their part in that regard. According to the uncontradicted testimony of Stokes, he did not know how the basement had been -constructed until the first part of February, and then he refused to have anything further to do with the premises. He may have been at the place several times, as he was, without making a careful inspection, for be had a right to rely upon the performance of the covenants; and, as that duty was imposed ' upon the plaintiff before any rights accrued to him, the defendants were not ■ called upon for the exercise of any active vigilance to ascertain his failure. We find no reason in fact or in law to permit a recovery on the ground of waiver by acceptance. ~ We have thus made a full and careful examination ■ of tliis case in the light of the decision of the court of appeals, and our con- . elusion is that the failure of the plaintiff to make the improvements on the demised premises, in accordance with the requirements of the covenants in his lease, deprives him of any right to recover against these defendants. The judgment and order denying the motion for a new trial on the minutes should .be reversed, and a new trial granted, with costs to abide the event.