[No. 5295.]
[No. 2932 C. A.]

## Newell et al. v. The National Advertising Company.

1. **Practice in Civil Actions—Contracts—Pleading—Evidence—Variance.**

   In an action on a contract for advertising, where the complaint alleges an agreement upon a "line rate," and the evidence shows that this was changed to an "inch rate" to suit the convenience of defendants and at their request, the variance is immaterial.—P. 300.

2. **Same—Evidence Sufficient to Support Judgment.**

   In an action on a contract for advertising, evidence reviewed, and held sufficient to support judgment.—P. 300.

3. **Appellate Practice—Motion for Nonsuit Overruled—Proceeding with Trial.**

   Where a motion for nonsuit has been overruled, by proceeding with the trial defendants waive their right to be heard on appeal upon such assignment of error.—P. 300.

*Appeal from the District Court of the City and County of Denver.*

*Hon. P. L. Palmer, Judge.*

Action by The National Advertising Company against Samuel V. Newell and Lyne S. Newell, Jr. From a judgment for plaintiff, defendants appeal.
*Affirmed.*

Mr. J. McD. LIVESAY, for appellants.

Mr. T. E. WATTERS, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Suit was brought by appellee to recover of appellants a balance due upon an advertising contract.

A trial to the court without a jury resulted in a judgment in favor of appellee for the amount sued for, from which judgment is this appeal.

The complaint alleged that on or about February 10, 1902, defendants made and entered into an agreement with the plaintiff whereby plaintiff was to place and cause to be inserted in certain papers, journals and publications, advertisements furnished by the defendants; that by such agreement the defendants were to pay plaintiff a schedule of rates per line for the advertisements inserted by it in certain designated publications, which schedule of rates is set forth in the complaint; that in pursuance of said agreement, the defendants furnished copies of advertisements with instructions to plaintiff to publish the same in certain papers, and that the same were inserted and published according to the instructions of plaintiff (an itemized statement, giving the date, the number of lines, the rate per line and the papers in which published, being set forth in the complaint); that by reason thereof there became due the plaintiff from the defendants $3,279.89, upon

which defendants have paid the sum of $1,750.00 and no more; leaving a balance due plaintiff of $1,529.89, for which amount judgment was prayed.

The answer admits that on or about February 10, 1902, the defendants made and entered into an agreement with the plaintiff concerning advertisements, whereby plaintiff was to place or cause to be inserted advertisements, furnished by the defendants, in the newspapers, journals and publications to be selected or designated by the defendants, but denies that the agreement was upon the terms or upon the rates alleged in the complaint; and alleges that the defendants paid the plaintiff the sum of $2,239.20 on account of advertising under the agreement made and entered into by and between plaintiff and defendants; admits that there is a balance due of $345.49, in money, and $258.56, in stock of a certain oil company at the market value of said stock; alleges that the agreement entered into between the plaintiff and defendants was to the effect, that defendants were to pay plaintiff the lowest rates at which any advertising firm, corporation, company or agent could do the same for; alleges that in case said advertising so to be done did not result beneficially financially to defendants, that plaintiff should and would take and receive a part of its compensation in certain oil stock at the market value thereof; alleges that such advertising did not, and has not, resulted beneficially financially to defendants, and that, prior to the commencement of suit, defendants so notified plaintiff, and offered to it the oil stock, pursuant to the agreement entered into between the plaintiff and defendants, which plaintiff refused to receive.

The reply put in issue the material allegations of new matter in the answer.

At the close of plaintiff's testimony defendants moved a nonsuit: 1st, for the reason that plaintiff has failed to make out a case; 2d, for the reason that the evidence varies from the allegations of plaintiff's complaint; 3d, for the reason that the evidence on the part of plaintiff, if it shows any agreement between plaintiff and defendants, shows a contract or agreement between plaintiff and defendants covering advertising from time to time, week to week, as the case may be, and that no such contract as shown by the evidence is claimed by the plaintiff in its complaint.

This motion was denied and error is assigned thereon, and is the only assignment of error relied on here.

A Mr. Westlake, who was the soliciting agent for plaintiff, testified, in substance, that during the early part of February, 1902, he had a number of interviews with Mr. Lyne S. Newell, Jr., one of the defendants, and solicited Mr. Newell to make a contract with the plaintiff company for a line of advertising; that he submitted to Mr. Newell a list of newspapers with their circulation and rates per line; that on or about February 10, 1902, an agreement was entered into by the witness, representing the plaintiff, and Mr. Newell, representing the defendants, to the effect that the plaintiff should cause to be inserted and published in certain newspapers and publications, to be designated by Mr. Newell, advertisements which were to be furnished by Mr. Newell, at the rates per line theretofore given by the witness to Mr. Newell, and from time to time to be furnished him upon estimates; that pursuant to such agreement, copies of the advertisements were furnished the plaintiff from time to time during several months and inserted and published by the plaintiff in the newspapers and publications, a list of which is set

forth in the complaint; that from time to time the witness submitted to Mr. Newell estimates of the cost of publishing certain advertisements which Mr. Newell furnished him, in various newspapers and other publications. It appears that these estimates, copies of which were introduced in evidence, in many instances, were based upon the cost per inch instead of the cost per line. The witness testified that this change, from the line rate to the inch rate, was made by him pursuant to the request of Mr. Newell.

Mr. Hawley, president of the plaintiff company, testified that he went to the office of defendants, and with Mr. Newell checked up the account, at that time Mr. Newell did not dispute the bill; that subsequently Mr. Newell said that he would not pay the bill, claiming that there was an overcharge in the bill. This witness also testified to the total amount of advertising done by plaintiff for defendants, the amount paid thereon and the balance due.

Counsel for appellants relies upon the one proposition, that it is apparent from the evidence that no such agreement as is alleged in the complaint, was entered into between plaintiff and defendants at any time; that the evidence fails to establish any such agreement.

Referring to the evidence of Mr. Newell and Mr. Hawley, counsel in his brief says:

"The evidence of these two persons, if it shows anything concerning an agreement as to advertising, shows a series of agreements, or rather orders, given from time to time, based on estimates submitted from time to time, which estimates were an approximation only of what the cost of advertising would probably be, and these estimates of cost or rate did not give or show the rate per line or any rate per line."

We do not so read the testimony.

In our judgment the evidence shows that about February 10, 1902, an agreement was entered into by and between plaintiff and defendants, by which the plaintiff agreed to do certain advertising in certain designated papers and publications for the defendants at specified rates. The contention that the estimates were not based upon the rate per line is a mere quibble, as the evidence shows that the change in the estimates from the rate per line to the rate per inch was at the request of defendants and for their convenience.

The court committed no error in overruling the motion for a nonsuit. Mr. Newell, when placed upon the stand by appellants, testified time and again to the agreement which had been entered into by and between himself, representing the defendants, and Mr. Westlake, representing the plaintiff. This witness also testified to a conversation between himself and Mr. Hawley, president of the company, during which conversation he stated a number of times to Mr. Hawley that an agreement had been made and entered into between himself and Mr. Westlake as the representative of plaintiff, on or about February 10, 1902. If there was any defect in plaintiff's proof in support of the cause of action alleged in the complaint, such defect was cured by the testimony of this witness on behalf of defendants; and defendants, by proceeding with the trial, waived their right to be heard here upon this assignment of error.—*Railroad Company v. Henderson,* 10 Colo. 1; *Jennings v. National Bank,* 13 Colo. 417.

Perceiving no error in the record, the judgment will be affirmed.                    *Affirmed.*

Chief Justice Steele and Mr. Justice Caswell concurring.